UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIEGO MANUEL GALVAN,

        Petitioner,

                                  CASE NO. 2:11-CV-13118

v.                            JUDGE LAWRENCE P. ZATKOFF

                                  MAGISTRATE JUDGE PAUL J. KOMIVES

KENNETH T. McKEE,

        Respondent.[1]

_____/

# REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      D.    *Joint Trial (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      E.    *Double Jeopardy (Claims II, III, and VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
                 a. Felony Murder and Predicate Felony . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                 b. First and Second Degree Murder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      F.    *Prosecutorial Misconduct (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      G.    *Ineffective Assistance of Counsel (Claims I and V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                 a. Failure to Seek Severance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                 b. Failure to Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
                 c. Failure to Investigate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
      H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 23
            1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
            2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
      I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

---

[1]By Order entered this date, Kenneth T. McKee has been substituted in place of Carmen Palmer as the respondent in this action.

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Diego Manuel Galvan is a state prisoner, currently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan.

2.      On May 22, 2009, petitioner was convicted of first degree felony murder, MICH. COMP. LAWS § 750.316(1)(b); second degree murder, MICH. COMP. LAWS § 750.317; first degree home invasion, MICH. COMP. LAWS § 750.110a(2); and three counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Oakland County Circuit Court.  On June 15, 2009, he was sentenced to a mandatory term of life imprisonment without possibility of parole for the first degree murder conviction, concurrent terms 40-60 years' imprisonment and 10-30 years' imprisonment on the second degree murder and home invasion convictions, respectively, and to mandatory terms of two years' imprisonment on each felony-firearm conviction, concurrent with each other but consecutive to the other sentences.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      WHERE MR. GALVAN'S DEFENSE THEORY WAS ANTAGONISTIC AND IRRECONCILABLE TO THE THEORY OF HIS CODEFENDANTS, HE WAS DENIED A FAIR TRIAL BY THE TRIAL COURT'S REFUSAL TO EITHER SEVER MR. GALVAN'S TRIAL OR SEAT A JURY SEPARATE FROM THAT OF CODEFENDANTS JEAN CINTRON AND RAUL GALVAN; COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A SEPARATE JURY FOR MR. DIEGO GALVAN. US CONST AM VI, XIV; MICH CONST ART I SEC 17, 20.

II.     THE TRIAL COURT ERRONEOUSLY SCORED 10 POINTS FOR OV 14

2

ABSENT ANY EVIDENCE ESTABLISHING THAT MR. GALVAN WAS THE LEADER IN A MULTIPLE OFFENDER SITUATION.

III.   THE CONSTITUTIONAL PROTECTION AGAINST DOUBLE JEOPARDY INVOLVING MULTIPLE CONVICTIONS FOR THE SAME OFFENSE REQUIRES VACATING MR. GALVAN'S HOME INVASION CONVICTION, WHERE HOME INVASION WAS THE PREDICATE OFFENSE FOR HIS FELONY MURDER CONVICTION.

IV.   MR. GALVAN'S CONVICTIONS AND SENTENCES FOR TWO COUNTS OF MURDER FOR THE DEATH OF JUST ONE PERSON VIOLATES THE CONSTITUTIONAL PROTECTION AGAINST DOUBLE JEOPARDY.

Petitioner also filed a *pro se* supplemental brief, raising three additional claims:

V.   THE PROSECUTOR WAS INVOLVED IN MISCONDUCT BY ALLOWING TEISHA JOHNSON TO COMMIT PERJURY WITHOUT CORRECTING HER STATEMENTS AT TRIAL.

VI.   THE TRIAL COUNSEL WAS INEFFECTIVE FOR NOT CONDUCTING A PRE-TRIAL INVESTIGATION AND NOT FILING CRITICAL PRE-TRIAL MOTIONS.

VII.   THE TRIAL JUDGE CLEARLY ABUSED ITS DISCRETION BY ALLOWING THE GUILTY VERDICT OF THE JURY TO STAND THAT FOUND APPELLANT GUILTY OF FIRST DEGREE MURDER AND SECOND DEGREE MURDER ON ONE VICTIM.

The court of appeals agreed that petitioner's conviction on two separate murder counts for the death of a single victim violated the Double Jeopardy Clause, and that Offense Variable 14 was improperly scored. The court of appeals rejected petitioner's remaining claims. The court accordingly remanded the matter to the trial court with directions to correct the presentence report and resentence petitioner. *See People v. Galvan*, No. 292877, 2010 WL 2093376 (Mich. Ct. App. Dec. 14, 2010) (per curiam). The trial court entered an amended judgment of sentence on April 14, 2011.

4.     Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The

3

Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Galvan*, 489 Mich. 900, 796 N.W.2d 254 (2011).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 19, 2011.  As grounds for the writ of habeas corpus, he raises the claims that he raised in the Michigan Court of Appeals, except for his challenge to the scoring of Offense Variable 14.[2]

6.      Respondent filed his answer on January 25, 2012.  He contends that petitioner's prosecutorial misconduct claim is barred by petitioner's procedural default, and that all of petitioner's claims are without merit.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the September 13, 2008, shooting death of Laval Crawford in Pontiac, Michigan.  Petitioner was tried jointly with codefendants Jean Cintron and Raul Galvan.  A third codefendant, Bryan Valentin, was tried at the same time but before a separate jury.[3]  The evidence adduced at trial was summarized by the Michigan Court of Appeals:

> Defendant's convictions stem from the shooting death of Laval Crawford outside of Crawford's home on September 13, 2008. . . .   Trial testimony was adduced that, just before the shooting, defendant and his codefendants went to Antoine Hurner's house looking for Crawford, because Crawford had allegedly robbed Cintron.  Hurner would not provide the group with Crawford's contact information, and the group eventually left.  A short time later, the group, all armed, forced their way into Crawford's home.  One of the men directed Beatrice McCray, Crawford's girlfriend, to call Crawford and advise him to come home.  Once Crawford arrived outside, the men went out the front door of the home and began firing their guns. [Crawford] was shot twice.  It is not clear who fired the first shot

---

[2]Petitioner has not filed a brief on support of his petition or a reply to respondent's answer.  In analyzing petitioner's claims, therefore, I rely on the arguments made in his state court briefs.

[3]Cintron was convicted on the same charges as petitioner.  Valentin was convicted on the murder and felony-firearm charges, as well as an addition charge of felon in possession of a firearm, but acquitted of the home invasion charge.  Raul Galvan was acquitted of all charges except for a firearm possession charge arising from his arrest.

that hit Crawford, but, according to eyewitness Teisha Johnson, defendant fired the
second shot that hit Crawford.

*Galvan*, 2010 WL 5093376, at *1; *see also*, Def.-Appellant's Br. on Appeal, in *People v. Galvan*,

No. 292877 (Mich. Ct. App.), at 1-14; Pl.-Appellee's Br. on Appeal, in *People v. Galvan*, No.

292877 (Mich. Ct. App.), at 1-10.

C.   *Standard of Review*

    Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

    "[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

5

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.  As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the

holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Joint Trial (Claim I)*

Petitioner first contends that he was denied a fair trial by being tried before the same jury as codefendants Cintron and Raul Galvan. The Court should conclude that petitioner is not entitled to

7

habeas relief on this claim.

 1. *Clearly Established Law*

 The Supreme Court has recognized no general right to a separate criminal trial.  In *Zafiro v. United States*, 506 U.S. 534 (1993), the Court considered "whether Rule 14 [of the Federal Rules of Criminal Procedure] requires severance as a matter of law when codefendants present 'mutually antagonistic defenses.'" *Zafiro*, 506 U.S. at 535.  *Zafiro*, however, was based solely on Rule 14, and did not establish any rule of constitutional law.  It is thus inapplicable to petitioner's state court conviction.  *Cf. Williams v. Singletary*, 114 F.3d 177, 181 (11th Cir. 1997) (noting that *Zafiro* involved an interpretation of the Federal Rules of Criminal Procedure and thus "it is not at all clear that *Zafiro* establishes a rule of constitutional law to be applied to state court judgments in § 2254 proceedings," but finding it unnecessary to resolve the question); *Henry v. Scully*, 918 F. Supp. 693, 714 n.7 (S.D.N.Y. 1995) ("Petitioner's counsel argues that Henry's trial counsel erred in failing to request a severance.  This argument, which depends upon Henry's having had a constitutional right to a severance, is without merit.  Henry has shown no federal constitutional right to a severance.").

 Because there is no constitutional right to severance *per se*, habeas relief will be warranted for a trial court's failure to sever a petitioner's trial from that of his codefendants only where the denial itself deprives the petitioner of a fundamentally fair trial.  In other words, "a state trial court's refusal to grant severance mandates habeas corpus relief (1) when the joint trial 'resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses . . . or the right to confrontation,' or (2) when the joint trial abridged the defendant's 'fundamental right to a fair trial as secured by the Fourteenth Amendment.'" *Turpin v. Kassulke*, 26 F.3d 1392, 1404 (6th Cir. 1992) (Feikens, D.J., concurring in part and dissenting in part) (quoting *Jenkins v. Bordenkircher*, 611 F.2d

8

162, 168 (6th Cir. 1979)); *accord Hutchinson v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002).  Where the

denial of a specific constitutional right is not involved, a failure to sever results in a denial of a fair

trial only if there "is a serious risk that a joint trial would . . . prevent the jury from making a reliable

judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.  Under this prong of the test, severance

is generally mandated only in three situations: (1) where there is compelling evidence admitted

against a codefendant which would not otherwise be admissible against the defendant; (2) where the

sheer number of defendants and charges makes it impossible for the jury to separate the issues

involved; and (3) where the defendant's involvement in the crime is significantly different in scope

or magnitude from that of his codefendants.  *See United States v. Blankenship*, 382 F.3d 1110, 1123-

25 (11th Cir. 2004).  However, joint trials are favored, and the potential for prejudice alone is

insufficient to mandate severance.  *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

    2.    *Analysis*

Petitioner contends that the failure to grant him a separate trial denied him due process

because it resulted in inadmissible evidence being admitted against him, and because his defense

was antagonistic to those of his codefendants.  The Michigan Court of Appeals (analyzing the claim

solely as an ineffective assistance claim) rejected this claim, reasoning:

> Defendant first suggests that there was evidence admitted against a
> codefendant, and therefore heard by defendant's jury, which would not otherwise
> have been admissible if defendant were tried alone. The challenged testimony
> consists of the following: Hurner's testimony that Valentin questioned him about
> Crawford's whereabouts; Hurner's testimony that Cintron informed him that he
> (Cintron) had been robbed of $5,000; and, law enforcement testimony concerning
> weapons found in the codefendants' possession. None of the challenged testimony
> directly implicated defendant. The challenged evidence was nonetheless relevant
> against defendant in that the evidence adduced at trial showed that defendant acted
> in concert with his codefendants. Defendant and his codefendants jointly participated
> in the criminal transaction, and therefore, it is reasonable that testimony concerning
> codefendants would be presented at the joint trial. Even if defendant could

9

demonstrate that the challenged evidence was inadmissible against him, he cannot establish prejudice in light of the untainted evidence against him. Multiple witnesses identified defendant as one of the armed men at Crawford's home. Johnson testified that she observed defendant run toward Crawford, who was crawling in the grass, and fire a shot at him from close range. This testimony was sufficient to sustain defendant's convictions.

Furthermore, defendant's codefendants did not present defense theories that were irreconcilable with defendant's defense. Defendant's defense was that he and his codefendants went to Crawford's home merely to retrieve the money that Crawford had stolen from Cintron. Defense counsel relied on the argument that the prosecution simply could not prove that defendant shot Crawford or aided and abetting in the shooting. Codefendants did not forward a defense to the contrary. Because defendant's defense was not irreconcilable with that of his codefendants, counsel was not ineffective for failing to move for a separate trial on the basis of mutually exclusive defenses.

*Galvan*, 2010 WL 5093376, at *2. This determination was reasonable.[4]

As to the evidentiary issues, the court of appeals determined that the evidence admitted at petitioner's trial was relevant as to him and thus admissible. This determination on a question of state law is binding here, and precludes a finding that petitioner was prejudiced by the introduction of evidence that would have been inadmissible at a separate trial. *See Gomez v. Pliler*, 212 Fed. Appx. 687, 689-90 (9th Cir. 2006). Nor can petitioner show that the defenses he and his codefendants presented were mutually antagonistic. Petitioner's defense at trial, as reflected in counsel's closing argument, was that the defendants were looking for Crawford in order to retrieve Cintron's property from Crawford, who had robbed and beaten Cintron, and that there was no

---

[4]Although the court of appeals did not explicitly address the substantive severance claim apart from the ineffective assistance claim, AEDPA deference still applies to the state court's rejection of the claim. *See Davie v. Mitchell*, 547 F.3d 297, 315 (6th Cir. 2008) (fact that state appellate court "actually determined–in the context of adjudicating [petitioner's] ineffective assistance claim–that the underlying substantive claim lacked merit . . . requires inexorably that AEDPA's deferential standard be applied to the state appellate court's determination of that claim."); *cf. Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]"). Further, for the reasons explained below, the Michigan Court of Appeals's decision was not only reasonable, but was also correct, and thus petitioner would not be entitled to habeas relief even under *de novo* review.

evidence that they intended to kill or assault Crawford.  Counsel also argued that there was a reasonable doubt as to various elements of the charges (*i.e.*, no evidence of premeditation or intent to kill with respect to the murder charges; reasonable doubt as to whether McCray let defendants into the house with respect to the home invasion charge). *See* Trial Tr., dated 5/21/09, at 195-214. Counsel for Cintron presented essentially the same defense, and several times explicitly referenced the closing argument of petitioner's counsel. *See id.* at 214-28.  Raul Galvan's defense was somewhat different in that he argued he was not involved at all, the evidence showing only that he met up with the others sometime after the robbery, but his defense was not antagonistic to petitioner's defense.  Raul Galvan did not, through his defense, shift blame to the other defendants or indicate that they had committed the crimes with which they were charged.  Finally, the trial court properly instructed the jury on the burden of proof and repeatedly instructed the jury that it must consider each charge against each defendant separately. *See id.* at 251, 256, 265-66, 275.  The jurors are presumed to have followed these instructions, and the instructions therefore ameliorated any potential prejudice. *See Stanford*, 266 F.3d at 459 (citing *Francis v. Franklin*, 471 U.S. at 307, 324 n.9 (1985)).  In these circumstances, the Michigan Court of Appeals's conclusion that petitioner was not denied a fair trial by the failure to sever his trial from those of his codefendants was reasonable. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Double Jeopardy (Claims II, III, and VI)*

       In his second, third, and sixth habeas claims, petitioner contends that his right to be free from double jeopardy was violated by his multiple convictions.  In Claim II, he contends that his convictions for both felony murder and the underlying predicate felony of home invasion violates the Double Jeopardy Clause.  In Claims III and VI, he contends that his convictions for both first

degree felony murder and second degree murder arising from the death of a single victim violates the Double Jeopardy Clause.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      1.     *Clearly Established Law*

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

However, in the context of multiple punishments, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986).  As

the Supreme Court explained, when "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).  In determining whether the Michigan legislature intended to authorize separate, cumulative punishments in the circumstances present here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]" *Brimmage*, 793 F.2d at 1015; *see also*, *Hunter*, 459 U.S. at 368.  Thus, the question is whether the Michigan Legislature intended that convictions for felony murder and the underlying predicate felony gives rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double jeopardy violation.  *Johnson*, 467 U.S at 499 n.8.  In making this determination, the Court is bound by the Michigan courts' interpretation of state law.  *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

Where the legislative intent is not clear, the Court must apply the *Blockburger* "same elements" test to determine whether multiple prosecutions or punishments violate the Double Jeopardy Clause.  Under this test:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies.  The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon*, 509 U.S. 688, 696 (1993) (citations omitted); *see also*, *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

2.    *Analysis*

13

*a.  Felony Murder and Predicate Felony*

Petitioner contends that his convictions for both first degree felony murder and the underlying predicate felony of home invasion violates the Double Jeopardy Clause.  The Michigan Court of Appeals, applying the *Blockburger* test, rejected this claim.  The court reasoned that "[h]ome invasion contains an element not contained in felony murder, namely, the breaking and entering of a dwelling," while "[f]elony murder contains an element not contained in home invasion, namely, the killing of a human."  *Galvan*, 2010 WL 5093376, at *4.  This determination was reasonable.

On the surface, petitioner's claim makes intuitive sense: where first degree home invasion is the predicate offense to a felony murder charge, one cannot commit the felony murder without also having committed the home invasion.  In such a situation, punishing a defendant for both offenses seems to be a straightforward violation of *Blockburger*.  However, the "analytical approach of *Blockburger* . . . requires that the statutory provisions' required elements be viewed in the abstract."  *United States v. Ehle*, 640 F.3d 689, 696 (6th Cir. 2011); *Gonzalez v. Wolfe*, 290 Fed. Appx. 799, 808 (6th Cir. 2008).  Here, in the abstract, it is possible to commit first degree felony murder without also committing first degree home invasion, *i.e.*, by committing some other predicate felony.  Thus, the court of appeals was reasonable in concluding that the multiple punishments did not offend the Double Jeopardy Clause.

Moreover, even if the court of appeals were incorrect in its *Blockburger* analysis, petitioner would not be entitled to relief.  As explained above, in the multiple punishment context the question is purely one of legislative intent.  The *Blockburger* test is merely one method of divining that legislative intent, but it is not the sole one.  *See Albernaz v. United States*, 450 U.S. 333, 340 (1981);

*Missouri v. Hunter*, 459 U.S. 359, 367 (1983); *Whalen v. United States*, 445 U.S. 684, 691 (1980); *Beam v. Foltz*, 832 F.2d 1401, 1411 (6th Cir. 1987). Thus, if a legislature intends to authorize cumulative punishment under two statutes–even if those two statutes constitute the same "offense" under the *Blockburger* test–multiple punishments after a single trial are permissible. *See Hunter*, 459 U.S. at 368-369. As explained by the Sixth Circuit, "[e]ven if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Banner v. Davis*, 886 F.2d 777, 781 (6th Cir. 1989). In *People v. Ream*, 481 Mich. 223, 750 N.W.2d 536 (2008), the Michigan Supreme Court, applying its own *Blockburger* analysis, concluded that the Michigan legislature intended to authorize multiple punishments upon conviction for first degree felony murder and the underlying felony. Because the Michigan Supreme Court has made this determination of the Michigan legislature's intent, this "court's inquiry is at an end" and there is no double jeopardy violation. *Johnson*, 467 U.S at 499 n.8. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim. *See Berry v. Capello*, No. 2:10-CV-11398, 2012 WL 4450049, at *8 (E.D. Mich. Sept. 26, 2012) (Roberts, J.).

## b. First and Second Degree Murder

Petitioner also asserts that his conviction of both first degree felony murder and second degree murder violates the Double Jeopardy Clause. This is true, but provides no basis for habeas relief because the constitutional error has already been corrected by the state courts. On appeal, the Michigan Court of Appeals agreed with petitioner, and vacated both the second degree murder conviction and the related felony-firearm conviction. *See Galvan*, 2010 WL 5093376, at *4. This "remedy fully vindicated [petitioner's] double jeopardy rights." *Jones v. Thomas*, 491 U.S. 376, 382

15

(1989).  Because, with respect to the murder, petitioner is "now serving only a single sentence for

a single offense[,] [u]nder any view of the substantive content of the double jeopardy bar against

multiple punishments, [petitioner] has had every benefit the Clause affords."  *Id*. at 382 n.2.

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Prosecutorial Misconduct (Claim IV)*

       Petitioner next contends that the prosecutor committed misconduct, and thus deprived him

of a fair trial, by allowing witness Teisha Johnson to provide false testimony.  The Court should

conclude that petitioner is not entitled to habeas relief on this claim.

       1.      *Clearly Established Law*

       It is well established that "a conviction obtained by the knowing use of perjured testimony

is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false

testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103

(1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959).  This is true whether

the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S.

at 270, and it matters not whether the prosecution directly elicits the false testimony or merely

allows false testimony to go uncorrected, *see id*. at 269.  To succeed on this claim petitioner must

show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the

falsity; and (3) the evidence was material.  *See Coe v. Bell*, 161 F.3d 320, 343

       With respect to the first element, it is well established that petitioner bears the burden of

proving that the testimony amounted to perjury.  As the Fourth Circuit has explained, "[a] defendant

seeking to vacate a conviction based on perjured testimony must show that the testimony was,

indeed, perjured.  Mere inconsistencies in testimony by government witnesses do not establish the

16

government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976). (6th Cir. 1999). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'"). In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

With respect to the second element, as the Sixth Circuit has explained in order for a witness's perjury at trial to constitute a basis for habeas relief, the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975). The Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in or knowledge of the perjury. *See, e.g.*, *Rosencrantz v. Lafler*, 568 F.3d 583-84 (6th Cir. 2009); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Ford v. United States*, No. 94-3469, 1994 WL 521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 WL 13195, at *1 (6th Cir.

17

2:11-cv-13118-LPZ-PJK   Doc # 11   Filed 03/19/13   Pg 18 of 26   Pg ID 837

Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury known by the prosecution to be such. *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (emphasis added) ("[I]t is established that a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment."); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added) (due process is violated by the "*knowing* use of perjured testimony."); *see id.* at 103-04 & nn. 8-9 (discussing cases). At a minimum, "[t]he Supreme Court has never held that due process is offended by a conviction resting on perjured testimony where the prosecution did not know of the testimony's falsity at trial." *LaMothe v. Cademartori*, No. C 04-3395, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 11, 2005) (citing *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of certiorari) (noting that the Supreme Court has yet to consider the question of whether due process is violated by a conviction based on perjured testimony regardless of the prosecutor's knowledge)); *cf. Briscoe v. LaHue*, 460 U.S. 325, 326 n. 1 (1983) ("The Court has held that the prosecutor's knowing use of perjured testimony violates due process, but has not held that the false testimony of a police officer in itself violates constitutional rights.").

2.    *Analysis*

Petitioner contends that the prosecution presented false testimony when it allowed Johnson to testify that she witnessed the shooting. As summarized by the Michigan Court of Appeals, "Johnson testified that she witnessed [petitioner] run up to Crawford, who was crawling on the ground after having been shot, and shoot him. Johnson also selected [petitioner's] photograph from a lineup." *Galvan*, 2010 WL 5093376, at *3. Petitioner contends that this testimony was false

because Detective Jeff Buchmann testified that, when Johnson gave him a statement on the day of the shooting, she did not say that she had witnessed Crawford getting shot, nor did she identify petitioner as one of the shooters.  The Michigan Court of Appeals rejected this claim, concluding that the fact that Johnson did not tell Detective Buchmann what she had observed did not, by itself, demonstrate that her trial testimony was false.  *See id.*  This determination was reasonable.

Petitioner has presented no evidence that Johnson's testimony at trial was false, or that the prosecutor knew that Johnson committed perjury.  Inconsistencies between Johnson's testimony and her prior statement does not by itself establish that Johnson committed perjury or that the prosecution knew of the alleged perjury.  Because petitioner has failed to establish that Johnson's testimony was "indisputably false," *Byrd*, 209 F.3d at 817-18, or that the prosecutor knew of any falsity, the Michigan Court of Appeals's rejection of petitioner's claim was reasonable. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Ineffective Assistance of Counsel (Claims I and V)*

Finally, petitioner contends that he received constitutionally ineffective assistance of counsel at trial.  Specifically, petitioner contends that counsel was ineffective for failing to seek severance of his trial from those of his codefendants, object to Johnson's perjured testimony, and conduct any pretrial investigation.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were

so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland* to claims adjudicated on the merits by the state courts:

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.      *Analysis*

a.  *Failure to Seek Severance*

Petitioner first contends that counsel was ineffective for failing to file a motion to sever his trial. The Michigan Court of Appeals rejected this claim, concluding that petitioner was not entitled to severance. *See Galvan*, 2010 WL 5093376, at *1-*2. This determination was reasonable. As explained above, petitioner was not entitled to severance as a matter of due process. Further, the Michigan Court of Appeals determined that petitioner was not entitled to severance as a matter of

21

state law, and this state law determination is binding on this Court in analyzing petitioner's ineffective assistance claim. *See Narlock v. Hofbauer*, 118 Fed. Appx. 34, 34 (6th Cir. 2004) (per curiam); *Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). Because it is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection, *see Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993), petitioner cannot show that counsel was ineffective for failing to seek severance.

### b. Failure to Object

Petitioner further contends that counsel was ineffective for failing to object to Johnson's perjured testimony. As explained above, however, petitioner has failed to show that Johnson's testimony was perjured and thus inadmissible. Further, counsel did impeach Johnson's testimony by eliciting from both her and Detective Buchmann that Johnson had not claimed to have seen the shooting or identified petitioner in her first statement to the police. Thus, petitioner cannot show that counsel was ineffective for failing to object to Johnson's testimony.

### c. Failure to Investigate

Finally, petitioner claims that counsel was ineffective for failing to investigate. However, petitioner provides no detail as to what investigation counsel should have conducted or what evidence such an investigation would have uncovered. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual

22

testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Similarly, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Here, petitioner has provided no allegation, much less evidence, showing that further investigation by counsel could have uncovered evidence that would have altered the outcome of the trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never

23

issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the

24

Court should also conclude that petitioner is not entitled to a certificate of appealability.  With respect to petitioner's severance claim, it is clear that the joint trial did not result in any inadmissible evidence being admitted against petitioner, and that he and his codefendants did not present mutually antagonistic defenses.  Thus, the resolution of this claim and of petitioner's related ineffective assistance of counsel claim is not reasonably debatable.  Because the Michigan legislature intended to authorize multiple punishments for felony murder and the underlying predicate felony, and because petitioner obtained relief on his other double jeopardy claim in the state courts, the resolution of petitioner's double jeopardy claims is not reasonably debatable.  Because there is no evidence that Johnson committed perjury, the resolution of petitioner's prosecutorial misconduct claim and his related ineffective assistance of counsel claim is not reasonably debatable.  Finally, because petitioner has put forth no allegation as to what a further investigation by counsel would have revealed, the resolution of petitioner's remaining ineffective assistance of counsel claim is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

I.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED.

R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated:  March 19, 2013              S/Paul J. Komives
                                    Paul J. Komives
                                    United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 19, 2013, by electronic and/or ordinary mail.

                                    S/Shawntel R. Jackson
                                    Case Manager